Good morning and may it please the court. We're here because the district judge in this case determined that prohibiting Mr. Vandonk as a condition of supervised release from viewing adult sexually explicit material violated his First Amendment rights and was overbroad, yet required Mr. Vandonk to comply with his treatment providers on the basis of his medical records. Much broader and more ill-defined prohibition on adult pornography and inappropriate sexual stimuli. Placing this restriction at one level of remove from the district judge by requiring it through the treatment provider resolves neither the vagueness nor the overbreadth problems recognized by the court and in fact also imposes a impermissible delegation of the district court's duty to impose a sentence. Mr. Vandonk When I read this case, I thought to myself, well, this is a treatment program as a term of supervised release. And it's trying to, well that kind of thing is used all the time. And so when I was nervous about doing it, I don't want to make supervised release an ineffectual tool because then you're going to have longer prison terms if you say, well, you know, supervised release can't do this, supervised release can't do that. And you can loosen the restrictions. You can restrict what's permissible on supervised release and say you can't do this on supervised release, you can't do this on supervised release. And then the sentencing judge will come to the conclusion, well, in fact, if supervised release can't do this and this and this, it's likely not to be effective for the purposes I want it to be effective for, which in this case is treatment. And then you get a longer prison term. One of the reasons I like supervised release is that it cuts down on the length of terms. But if you overburden it and undercut its effectiveness, it's going to shift to lengthier terms. That was my concern when I saw this, you know, treatment programs, they happen all, you know, something that's done all the time. Yes, Your Honor, there are some things that make this case different and I think will alleviate the court's concerns about overburdening supervised release in general. First of all, here, unlike in any other case that I have seen cited by the government or by the defense in this case, the district court recognized that the imposition of this specific prohibition on adult sexually explicit material did violate Mr. Van Donk's First Amendment rights and was overbroad. But he imposed, nonetheless, a broader treatment condition through the sex offender treatment provider. Her condition was vague, such that it failed to provide him any notice of what was prohibited. It's much vaguer than any of the conditions that are generally imposed in these kinds of cases, even in cases where the district court didn't impose it this time around. The district court required him to comply with his treatment provider's conditions and ratified her conditions. If you look at the text of the order, he was very clear that he was requiring Mr. Van Donk to comply with her conditions and that if he did not comply with those conditions, he would face violation. Can I ask a question about process and the sequence in which this case is being presented to us? Because as I understand it, the district court has detained your client and is scheduled to hear a revocation proceeding sometime next week. Is that right? That's correct, Your Honor. That hasn't been stopped or stayed, so it appears that is moving forward, correct? That's correct, Your Honor. As a practical matter, I don't think we're going to be able to decide this case before then anyway, but why wouldn't you be making this argument before the district court at that hearing and why should we be considering it now? Well, the violations before the district court include Mr. Van Donk's alleged failure to comply with treatment conditions and his removal from treatment, so just as a practical matter, this makes the question of his treatment conditions not a hypothetical question before this court. But it might become moot if the district court agrees with you next week. But we don't know that right now, and if the district court does not agree with me, they are likely to impose supervised release again, so we're facing a recurring miss. I mean, I have the same concern that my fine colleague does, and that is, are these questions even ripe in the framework that they're posed in? I mean, wouldn't these issues of vagueness and overbreadth, wouldn't they best be aired in the first instance in a revocation hearing before the district court on the question of revocation? And your defense would be, well, this was vague. I had no idea that I was violating a condition of supervised release. But for us to do it sort of ab initio, before the violation actually occurred or before revocation was even sought, because every violation, every time somebody violates a term of supervised release, it doesn't necessarily result in revocation. But it just didn't seem to me that it might be moot. And on the other hand, it didn't seem to me to be ripe for us. It seemed to me that the mature time to take the case was when he said, when this gentleman said, Your Honor, I just, I didn't, I had no idea. I was forced to guess at what I should comply with and whatnot. And wouldn't it be presented to us in a more concrete fashion if you took this up after the district court had ruled? Your Honor, I think the Sanchez case cited in briefing answers that very question. That case, this court ruled that the time for a defendant to challenge the constitutionality or the impositions of a condition of supervision is not on revocation, but rather on appeal of that condition. Well, what strikes me as a problem in this case is the sealed material. If we, I really haven't talked to my colleagues about it, but there's some things in there that trouble me, particularly with regard to the question of vagueness. And we're sitting here hamstrung not being able to point out that there are some things that, like movies and magazines, I don't think I'm going to be on anything sealed. And if we, if that were exposed, we might be able, might be better able to evaluate really how vague some of these restrictions are. There's some things in there that are awfully inconsistent. It's almost turning out to be an old Supreme Court comment about pornography. I know it when I see it. But some of the things that is in the sealed record really troubles me. She thinks that, the therapist thinks that's something he shouldn't be allowed to do. I don't, do you have a comment about that? I think you've hit the nail on the head, Your Honor. I think that her requirements are so inconsistent as to give him no real notice. Have you challenged that? Pardon? Have you challenged that below? Yes, that was among the issues that was argued below. Does it matter that, and I know you probably aren't happy about this, but he's been kicked out of the program, so he's no longer before this particular provider. Well, as it happens, my understanding is that she's the only sex offender treatment provider who has a contract with probation in the Harrisonburg area. So if the district judge imposes sex offender treatment again, he's going to be back with her. And I think that that is, in addition, these kinds of restrictions, even if he is not imposed in treatment with her, are restrictions that, as the court has noted, are often imposed in other cases. Who asked for a substantial portion of this record to be sealed? You, the court, government? At the time, I asked for it. Why don't you unseal it? It would make it a lot easier. Then, in that case, I would move that it be unsealed. I think this court has the ability to do that. Was it the district court or the, this, what is her name, Groff? The therapist? Yes, she was testifying before the district court. Who was it that imposed the restrictions? Was it the district court or Ms. Groff? She was the one who was imposing the restrictions. So the way this came to the court was that originally there had been a restriction imposed by the court, and it had morphed over time either to prohibit pornography or prohibit sexually explicit material or to prohibit some version of those two. And this case was before this court because there was a prohibition on pornography, which was remanded back to the district court. The district court then held one hearing, determined that the prohibition on pornography should be removed, and imposed a prohibition on sexually explicit material. So during the course of treatment, isn't treatment a dynamic process? Sometimes the conditions fluctuate depending on how the individual responds to the first couple of steps, and then it's, the treatment program can be gradually relaxed or whatever. But it's not, the treatment program isn't fixed in stone at the time it begins, is it? Well, this treatment provider, and I can refer to the location in the sealed material, but she did indicate that in fact it would be. Well, if you tied, for example, if you tied the definition of sexually explicit material to Congress' definition, he would have more notice. And so he's saying that the sealed material would not violate that. That is true. That is true. Now, I think even Congress' definition of sexually explicit material, and to be clear, we are certainly objecting to her definition of what is prohibited, which is, as I've said so broad, that he has no notice. But even if you look at the definition under 2256, even that is problematic when you actually look at it as to adult material. Because even that definition includes simulated sexual intercourse, and when you consider that the majority of R-rated movies, for example, that have a sex scene have... But it's less, Judge Floyd makes a good point, it's less vague. You may not like it, because I think what you would really like is to have the restriction, any restriction on adult pornography just thrown overboard. But we do have a problem here, and that is that the... This is a recidivist situation, and the attempts to reform his focus upon child pornography have not been particularly successful. And there is evidence before the district court that the adult pornography was a gateway to child pornography. And so there's a problem here, because one of the 35-53-8 factors is the prevention of recidivism, and the adult pornography leads into the child pornography. So let's suppose that some restriction is valid here. The two questions still remain, is this case really ripe at this point? And the second is, what restrictions would not be there? It just struck me that Judge Floyd made a good point, that the congressional definition has a lot more explicitness to it. The... I don't know, it's a tough situation, because a lot of times you can't script these things at the beginning, because some people respond very well to treatment, and the conditions ought to be relaxed. But I don't want to interrupt your argument. Go ahead, you have some... I do, Your Honor. If I may continue, I see that my time is up. No, no, we'll give you a few extra minutes. So first of all, as to your last concern voiced as to whether or not this might evolve over time, she did state clearly that she believed her prohibition would stay the same throughout the course of his treatment. Yeah, but I mean, a lot of treatment programs do evolve over time. This one, however, I think will not. As to the ripeness question, again, I think that the Sanchez court answers that as does the Loy case out of the Third Circuit, where the government made a similar argument or asked a similar question to the one you raise here. And in addition to the fact that under Circuit precedent, Mr. Van Donk would be found to have waived his appeal if he waited until he were violated on the condition and then challenged the condition, I think there's also the additional First Amendment concern that while he is subject to this condition, potentially protected speech is chilled. And that is a problem that he is subject to, regardless of whether or not he is ultimately violated on the condition, is that this condition does chill protected speech. So for those reasons, we would ask that. You've got some rebuttal time as well. Thank you, Your Honor. Thank you. Ms. Rottenborn. Good morning, Your Honors. Laura Rottenborn on behalf of the government. May it please the Court. The question that is before the Court this morning is whether a trial court, which everyone, including the defendant, agrees can require participation in a treatment program, can also require compliance with the rules of that treatment program. Every other Circuit Court of Appeals to have addressed this question has answered that question with a yes. And the government asks that this Court do so too. If a district court cannot require compliance with the rules of a treatment program, it effectively renders participation in that program toothless, and in turn, in all likelihood, ineffectual. That is why a term and condition of supervised release requiring a defendant to comply with all rules, regulations, and restrictions of a treatment program is commonplace as a term and condition of supervised release. I think there's some outer limits to that. I mean, if part of a treatment program was to sit in a chair without eating for 12 hours straight, we wouldn't say, well, no, you've got to comply with it because there's some blanket rule that you have to comply with all the conditions of a treatment program. Or if you were to say to someone, you can't read any book at all, that would be, you know, somebody, I mean, I can envision all kinds of extremes. I mean, you can't go to the movie, you know, I mean, there are conditions that are, I mean, this can't be just a blanket rule, can it? That's of course correct, Your Honor, and that's why it remains open for a defendant to challenge any specific application of any program's term and condition at the appropriate time, and that would be when it's actually imposed in the future and the defendant is alleged to have violated that term. Well, what about the Sanchez case? I mean, is the right to object waived if the defendant waits until a revocation hearing to raise it? No, Your Honor, and for two reasons. One, it's important to bear in mind the actual text of the term and condition that's being challenged here, and that condition is that the defendant must comply with the rules of the program. Now, the defendant makes a derivative argument that the rules of the program are vague, but there's no argument that the actual term and condition of supervised release is vague. Everybody understands, including the defendant, what it means to have to comply with the rules. He's just challenging what those rules actually are. So you don't think that his vagueness argument is in any sense waived? You think it's perfectly permissible for him to raise that at the revocation hearing and indicate that I had no idea that this was noncompliant? Yes, Your Honor, that's correct. To the extent a treatment program, whether it's a mental health program, substance abuse, or sex offender treatment program... Why would we want to look at a vagueness question before that time so that the defendant wouldn't have to come after the fact, but would be able to understand before the fact what the term required of him? I mean, how do we resolve that question where somebody really is genuinely in the dark about what he can and can't do? Absolutely, Your Honor. I'm not asking you to define this, but I think I'm a reasonably intelligent person, but I don't know how to define inappropriate sexual stimuli. So is he just left to figure that out? No, Your Honor, and I agree that that term in and of itself has the potential of being confusing, and if I could address that point in addition to Judge Wilkinson's question regarding vagueness as an upfront inquiry. The important distinction here is in the vagueness doctrine, which applies to statutes in order to put a man of ordinary intelligence on reasonable notice of what's prohibited. That says the Supreme Court in Williams. And that's, of course, in the context of a static law, a statute or a term and condition that the only information a defendant has about what is or is not prohibited is the text of that statute or regulation or term and condition. It's to avoid trapping the innocent. And we would know more what we were dealing with if there was a revocation and the defendant challenged the revocation? Yes, Your Honor. That would be the proper time to assess the application of this term and condition to the defendant's conduct. But if I may, I'd also like to address the concern raised by Judge Floyd regarding the definition of what's prohibited by the treatment provider here. Unlike a statute, which has one set of text that must be interpreted to decide whether or not you're putting a person on notice of what conduct is innocent versus criminal, in the treatment provider context, it is a dynamic process. There's give and take. And the treatment provider expressly testified at the sentencing hearing that she would ask Mr. Van Donk, the defendant in this case, to bring the material to her. And they would discuss what was causing him to have fantasies about children and what was causing his inappropriate and, in turn, criminal sexual behaviors. And that they would have a dialogue about that. And that she would set parameters as to what he could and could not view. And it is true that some of those parameters might extend beyond what is otherwise unprotected by the First Amendment. Is that in the record for us now? Yes, Your Honor. All right. But wouldn't the record be more complete if the district court were able to explore these matters below? We certainly agree with Your Honor's comment that this is appropriately handled at the time of the revocation, that it is not right now. I don't know that it's always appropriate if there's a seven-year or a five-year term of supervised release. All I'm saying is that in this case, with the revocation hearing, it's so close. I mean, there are supervised release terms that last the rest of your life. And that, you know, might present a different kind of question. But here, when the revocation hearing is just right over the horizon, wouldn't it be better to just have you raise it at a different time? We agree, Your Honor. And I do want to emphasize that— I'm asking this to get to Judge Wilkerson and Judge Diaz's concern. Why didn't the government agree to waive Sanchez's rule about you have to challenge it now rather than after the supervision has revoked? The government believes that the restriction that was imposed by the treatment provider is appropriate and should be upheld. There is an abundance of case law that states that a treatment provider can impose restrictions on what a sex offender can view as part of his treatment in order to maximize the potential that the offender will stop his deviant sexual predilections and stop reoffending. And those treatment strategies are best left to the experts in the field who know what is most effectual in terms of rehabilitation for these sex offenders. And so while it may not be appropriate for a court to preclude a defendant from looking at a Sears catalog with children in their underwear, because that is protected by the First Amendment and seemingly commonplace for the average person— Would a treatment provider be allowed to say don't look at the Sears catalog? In the context of treatment between an individualized patient and a treatment provider, the answer very well may be yes, Your Honor. Because for that patient, if that is a source of sexual stimuli that then leads him to search out further child pornography or real child pornography, then a treatment provider may instruct his or her patient to not look at triggers that then cause him to commit violations of the criminal exploitation, sexual exploitation of children laws. She could not, in the first instance, violate him or suggest a violation without first giving him notice that that particular material was out of bounds. That's exactly correct, Your Honor, and that's exactly what is trying to happen here. The government was very sensitive to that concern. It is why we remanded this case in the first instance. It's why we brought the sex offender treatment expert into the district court to testify. And it's why we are reiterating here on appeal that it is our understanding that this needs to be a dialogue between patient and treatment provider. And there has to be notices to the Sears catalog? Certainly, it is the government's view that if the treatment provider has not provided clear notice and opportunity to his or her patient about what the rules of the program are and what he or she can look at, it would be entirely inappropriate then to violate that patient for a determined condition of supervised release requirement. And if the supervisor, if the treatment provider has fallen down on providing notice, that again is something that could be raised at this ratification hearing. And indeed, it frequently happens that way, that a defendant does not comply with a treatment program. Or, for example, perhaps the rules of a halfway house or a community correction center. Oftentimes, terms and conditions of supervised release require compliance with various types of programming. And defendants frequently violate those rules. And probation helps work them out many times in the first instance without issuing a violation petition. In other instances, the rule violation does amount to a petition. And the defendant comes in for a revocation hearing. And then the issue is aired. But many times, even in that instance, the defendant is not revoked. This is an evolving process. Programs are evolving. And they are not static. It is not a one sentence. You may not do X. And if you do, you will be violated. The programs are designed to help the defendants get back on their feet. And they're designed to keep defendants from re-offending by rehabilitating them. And, frankly, on this record, I think that process has been extended. Some might say perhaps unreasonably. He's got all kinds of opportunities to comply with treatment. And he hasn't yet done so. That's correct, Your Honor. Mr. VanDock has had two opportunities for inpatient treatment, two opportunities for outpatient treatment. He's now been given yet another opportunity. The district court, who now has had many interactions with this particular recidivist offender, has done what he can do to try to craft the best possibility of helping Mr. VanDock become a productive member of our society again and not re-offend. There is one specific example that if we unseal the record and close the courtroom and read that out, I think you would understand, at least my concern, that this treatment provider is pretty inconsistent. I do understand that concern. I'd like to try to address it without violating the sealing order. Well, I'm proposing that maybe we just clear the courtroom and unseal the record. I'm happy to defer to the panel however you would like to proceed. I do think that the concern that underlies the issue can be addressed without addressing the material. This treatment provider was testifying at the district court hearing because the government had remanded this case based on the term and condition that the district court had originally imposed banning adult pornography. And it is the government's understanding that in order to ban a sex offender from viewing sexually explicit conduct related to adults as opposed to children, there must be a finding on the record that that ban is reasonably related to the 3553A1 goals and an individualized assessment with respect to the defendant. Because that record had not been as developed originally and because the way the language was worded in the term and condition that used the term pornography, the government felt like a remand was appropriate. And so the treatment provider at the district court hearing was testifying to help provide the required nexus between why this defendant, who committed a violation related to child pornography, should also be banned from viewing or possessing, and I'm going to shorthand it, adult pornography. But the example that I'm itching to discuss doesn't involve anything related to child pornography. And I think that goes to the idea of a treatment program and what is used to help an individual with this disease or this addiction. I am not a sex offender treatment expert, but I understand after having reviewed this record and done a number of these cases that I mean, we talked about the Sears catalog. I mean, that's a clear example that it seems innocuous on its face. Correct. But if a provider clinically determines that that has a potential for recidivism with respect to a particular offender, it seems to me entirely reasonable for him or her to say that's out of bounds. That's exactly right, Your Honor. Just in the way that treatment providers encourage or even require their patients to either affirmatively engage in behaviors or affirmatively avoid other behaviors as a part of their treatment. This is true in any treatment setting. And I suppose the defendant could come into court and say, I disagree with that, and provide his or her own experts or testimony to say why that's not appropriate in his case. Yes, that's correct, Your Honor. As you well know, the rules of criminal procedure allow a defendant to come in and request a modification of the terms and conditions of his release at any time with such evidence. But at any time during the treatment program, he can bring some aspect of it to the district court? Yes, Your Honor. For example, if the treatment provider became overly onerous and imposed a restriction that seemed completely unrelated to the treatment, he of course could come back in and just as you indicated at the beginning of this argument, challenge a restriction that was either unreasonable or unconstitutional. My concern about this is if we over-litigate the conditions of treatment and put it in stone and say, well, you can do this, you can't do that, these things, number one, they require a certain flexibility and they have to be individually tailored. And I'm not sure that that's amenable to our sort of broad perspective. On our part, the treatments draw on expert people, hopefully, with a large reservoir of expert training. And there's a flexibility and individual tailoring to all of them. But my larger concern is if we over-litigate the conditions of treatment and of supervised release, I think we're going to push district courts into not utilizing this as an effective tool. And supervised release has been thought to be a very humane and worthwhile alternative to longer prison terms. It helps people get back on their feet. And I know if we over-litigate it and over-burden it and say, this can't be done, this can't be done, some district courts are going to say, well, it's not worth it. I'm going to just provide longer prison terms. And that doesn't seem to me to be a very enlightened analogy. Yes, Your Honor, the government agrees with that. And also emphasizes that the Supreme Court has endorsed treatment programs as not only a useful tool, but a required tool. The United States Sentencing Guidelines require district courts to include a term and condition of supervised release that the defendant participate in treatment programs, whether it's a substance abuse program, mental health counseling, or sex offender programs. These are not optional. They're requirements. And so if the Sentencing Commission and the Supreme Court have all agreed that participation in these programs is not only encouraged, but required, it is a natural consequence that the district courts should also be allowed to require compliance with the rules of those programs, or else they are hollow mandates. And that is why the Fifth Circuit in Moran, the Ninth Circuit in Fellows, and the Eighth Circuit in Bender have all already held that a district court can impose, as a term and condition of supervised release, that a defendant comply with the rules of a treatment program. Fellows and Bender specifically... Treatment program is, to owners, there can be a petition for some sort of modification or clarification. That's correct, Your Honor. It's not exactly analogous, but it's similar to a facial versus an as-applied challenge. If at any point a term and condition of supervised release is applied in an inappropriate way, a defendant can challenge that term and condition at the appropriate time. It is commonplace for courts to impose, as a term and condition of supervised release, requirement with another program's rules, whether it's mental health counseling, substance abuse, drugs, halfway houses, community centers, or sex offender programs. They are ubiquitous. Do you think this case is ripe for decision, or should we hold off and wait for the revocation hearing? I think this Court should write an opinion that holds that district courts can require, as a term and condition of supervised release, that a defendant comply with the terms of a treatment program, and that it is not ripe to challenge the application of those terms and conditions until a treatment program does, in fact, impose an unreasonable condition. Well, we have that. Do you have the seal record with you? Yes, I do, Your Honor. I have it electronically. I think if you could look at page 108 through 111 in the seal portion, it has to do with the treatment provider, what was good and what was bad. And I have seen both of those things. There's just something wrong with her analysis. If she thinks the movie is okay and the magazine's not, if that's what's going on, this is troublesome. It sounds to me like perhaps you're concerned with the competency or the expertise of this particular treatment provider. I don't know whether it's that, or I don't know. What is challenging is that this record was not developed for the question that's really being asked. This record was developed to determine whether or not Mr. Van Dong should be precluded from looking at adult content. What Ms. Graff, the treatment provider, I think was trying to explain here, is that sex offender treatment is a very individualized process, and what is right for one sex offender to be rehabilitated may not be the same for what is needed for another sex offender to be rehabilitated. There is no one-size-fits-all, and that's why the district court should not micromanage this process, and it's why the district court should not try to write the terms of the treatment program into the terms and conditions of supervised release. It is very likely the case that as treatment evolves, so too will the rules and restrictions of the program, because we hope that a sex offender will rehabilitate and improve, and those rules and restrictions can be diminished over time. The important point here is that to the extent there's any concern about what was or was not allowed has been taken away. Nobody has to guess or look behind the curtain, because Mr. Van Dong was allowed to have a dialogue on a regular basis with his treatment provider, and in fact showed the treatment provider the materials to determine whether or not he was allowed to view them. Thank you very much. The portion I'm talking about is something that she testified to in one of these proceedings. It's not when they were having a dialogue. This is what she said in a court proceeding. It was okay in one hand and not okay on the other, and I'm just not making the connection. I see that my time is up. Your Honor, may I? Certainly, you should answer Judge Floyd's question. Thank you, Your Honor. If I understand your concern correctly, it's that you believe that a restriction imposed or would likely to be imposed by the treatment provider was inconsistent with a different set of material that she deemed permissible for Mr. Van Dong to view, and that you are having a hard time reconciling why one is permissive and one is restricted. That's correct. And I think that exactly proves the point, which is that none of us in this room are sex offender treatment experts, and what is appropriate to rehabilitate a sex offender should be left to the expert treatment providers, and to the extent there's any close calls at the margins, hopefully those can be resolved by the application of common sense and decency throughout the process, and if they cannot, then the defendant can, of course, bring a more egregious misapplication to the district court and request a modification. For all those reasons, we ask that this court affirm the term and condition in this case. Thank you very much. We thank you. I'm sorry. Ms. Trotten, we are happy to hear from you in rebuttal. Thank you. Any other chance? So the Third Circuit in Loy addressed this very question as to the ability to somehow cabin the vagueness of a condition by an ongoing dialogue with someone other than the judge, and what the court found was that this does not ameliorate the vagueness of the condition. Rather, this is why it is vague. If the condition is susceptible, quote, to no core meaning beyond whatever is necessary for Loy's rehabilitation, that does not cure the vagueness. That is why it is vague. And so for that reason alone, I think the government's argument as to how there should be some evolving dialogue and how that will solve the problem here really does not hold water. You're talking about a condition in a treatment program. Yes. Well, in that case, isn't your first recourse the dialogue between the treatment provider and the individual on supervised release, and then isn't the second recourse a petition for modification of the onerous condition? In other words, the difference between facial challenges and as applied? So why wouldn't you go at it in that way? I would point your honor to page 105 of the sealed record. I think that answers the question as to whether or not any dialogue is possible regarding this condition, because she certainly indicated that it wasn't. As to the facial versus the as applied challenge, the reason that this is appropriate to be resolved now, rather than waiting for it to be resolved after it has been applied to Mr. Van Dam, first of all is that I think that underscores in some ways the vagueness of the condition. If the condition is so vague that the court actually can't even get a handle on it until it's been applied, that is a strong indication that in fact it is too vague to be applied. So what would be the remedy in this case if we were to agree with you? Could we modify the condition to comply with the definition of the statute? Because I heard you say that you had problems with the statute too. Your honor, I do. I think there's certainly the condition that has been imposed on Mr. Van Dam is improper. The condition that had been previously imposed on Mr. Van Dam by the district court regarding pornography was also vague, and I understand the government agrees or at least does not dispute that. The condition prohibiting sexually explicit material was the condition that we were arguing about at the district court at the beginning of the hearing in the June hearing. That condition also is problematic because it also sweeps in protected conduct. So what would we say? What are you asking us to do? Well, I'm asking ultimately the problem. The court's concern here is Mr. Van Dam's viewing of child pornography. That's ultimately the concern. That is what all of this is intending to get to. And so if we look at the balancing of the 3583D factors, we have to consider what is the narrowest condition that will reach that. And this court and other courts have recognized that when a condition infringes on protected First Amendment rights, it actually has to be narrowly tailored and directly related to deterrence and protection of the public. I agree with that and say that the condition expressly would be limited to the definition of child pornography as defined by federal law. But in addition, your client would have to comply with all rules and regulations of the treatment program. Couldn't the provider then still legitimately say, because of your particular circumstances, Mrs. Van Dam, you're barred from viewing adult pornography and you're barred from looking at the Sears catalog. So at that point, assuming that she has made some rational connection between her prohibition and the treatment protocol for this defendant, why is that a problem? Because her prohibition is so vague that it does not let you know. No, it is now. But assuming that she could make the case, is there a problem? Are you suggesting that in no case can a child pornographer be barred from looking at adult pornography or other sexually stimulating materials so long as it's identified and there's a logical connection between that and his treatment? I think it has to be narrowly tailored and directly related under the precedent. So I think it has to be more than a logical connection. Certainly there are cases where this can be imposed. And the Thielman case out of the Third Circuit seems like a good case where the... One of the difficulties in your case is repeated. I mean, if deterrence and prevention of recidivism is a 35-53-8 goal, one of the problems is that it seems like everything has been tried and has sort of proved unsuccessful, which would make the connection to the 35-53-8 factor stronger, it seems to me, than somebody that did not have this particular history of being simply unable to curb this affinity. I mean, everything has been attempted and it doesn't seem to produce any kind of result. I mean, that may not be dispositive of the case, but it certainly makes it more plausible that the treatment conditions relate to 35-53-8. That's all I'm saying. I understand your point. I think it's interesting to note that after he returned from the inpatient treatment at Alpha Services, he was not violated for possessing child pornography. The prior violation was for possessing adult pornography. And similarly, the violations alleged in the pending violation... But the underlying convictions were for possessing child pornography. In 2008. And then he was violated the first time for possessing child pornography. All the violations of supervised release have to do with adult pornography? No, the most recent one and the pending one. Okay. So there was one previously that did involve child pornography. After that, he went to... All the convictions, of course, had to do with child pornography. Yes, Your Honor. After that, he went to an inpatient treatment program that allowed him to view sexually explicit materials. And there's letters from two of his therapists in the record from that program. And in the wake of that, if you look at the violations found by the court in the 2018 violation, which was the basis of the initial appeal in this case, it related to adult pornography. So I think it's incorrect to say that he is an incorrigible recidivist. And from the perspective of not viewing child pornography, he has actually shown some improvement. I would like to make one final point, if I may, although I see that my time is up. Can you do it quickly? Yes, Your Honor. Just that the government's concerns regarding ripeness and the court's concerns regarding ripeness, none of them take into account the fact that he is under this condition and suffering a continuing harm by having protected speech prohibited, regardless of whether or not he is facing a violation and that there's a recurring misproblem. If we have to go back down to the district court, a violation has to be found, and then we have to come back up to appeal. Meanwhile, he is suffering a harm because there is protected speech that is being prohibited. Well, I know that when you're in prison or under a term of supervised release, it doesn't mean you lose all your First Amendment rights, but it certainly means you're qualified. It does, Your Honor. But even so, he still has something. I would point the court to the Third Circuit's law opinion regarding prudential standing and why they found it appropriate under similar circumstances to go ahead and find the case was right for decision.  Thank you so much. Thank you, Your Honor. We will adjourn court, and then we'll come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States of this honorable court.
judges: J. Harvie Wilkinson III, Albert Diaz, Henry F. Floyd